**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THOMAS S. BURKE and | ) | |
| COURTNEY C. BURKE, | ) | Case No.  1:21-cv-1549 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| NATIONSTAR MORTGAGE, LLC d/b/a/ | ) | |
| MR. COOPER and TITLE365 COMPANY, | ) | |
| Defendants. | ) | |

## COMPLAINT

1.      Plaintiffs Thomas S. Burke and Courtney C. Burke ("the Burkes") bring this action to secure redress for the unlawful handling of their mortgage loan, and a failed mortgage loan transaction.

2.      In around winter 2020, Plaintiffs desired to refinance their mortgage loan. They inquired with their existing lender, defendant Nationstar Mortgage, LLC d/b/a Mr. Cooper ("Mr. Cooper"), and were set to close in around March or April 2020.

3.      Mr. Cooper set the loan for closing in March/April 2020, and had its affiliate title company, Title365 Company, set as the closing agent.

4.      Instead of the title company issuing instructions to the Burkes on how to fund the transaction, as is customary and industry standard, Mr. Cooper *itself* sent the Burkes funding instructions itself, through "regular," unsecured email.

5.      Unbeknownst to the Burkes, Mr. Cooper's email to the Burkes was intercepted by a thief, who changed the wire instructions to divert the money to the thief's bank account. Alternatively, the thief hacked into Mr. Cooper's email or other systems to perpetrate the fraud.

1

6.      Pursuant to the wire instructions the Burkes received from whom they believed to be the proper party, the Burkes wired $137,341.18 to the fraudster's account.

7.      Luckily, the fraudster's bank, Wells Fargo, noticed unusual activity, and placed a hold on the funds, but at that point about $40,000 had been debited by the fraudster.

8.      Plaintiffs sent two Qualified Written Requests to Mr. Cooper, asking for information, and to remedy the situation.

9.      Mr. Cooper responded to only one of those letters, and outrageously blamed Plaintiffs for the situation. Both responses were legally insufficient.

10.     Plaintiffs seek the remaining approximately $40,000, plus interest, actual, statutory and punitive damages, and attorney's fees and costs.

## PARTIES

11.     Defendant Mr. Cooper is a national mortgage lender with a principal place of business at 800 State Highway 121 Bypass, Lake Vista 4, Lewisville, Texas 75067, and is incorporated in Delaware. Mr. Cooper is a citizen of Texas and Delaware. Mr. Cooper is the servicer for Plaintiff's existing loan, and was to be the servicer for their refinanced loan. Mr. Cooper also acted as a fiduciary and title company for the Plaintiffs with regard to the transaction at issue.

12.     Defendant Title365 Company ("Title365") claims to be the "most technologically advanced nationwide provider of title insurance and settlement services." Its headquarters are in California and it is incorporated in California. Title365 is a citizen of California.

13.     Plaintiffs are husband and wife, who reside in Evanston, Illinois. The situs of the real estate at issue is their home in Evanston, Illinois, which is in this District. Both Mr. and Mrs.

2

Burke are citizens of Illinois. Their existing Mr. Cooper loan is federally-related, and the prospective Mr. Cooper loan is also federally-related.

## JURISDICTION

14.     This Court has federal question jurisdiction under the Real Estate Settlement Procedures Act, ("RESPA") as amended, 12 U.S.C. §§ 2601 et seq., ("RESPA"), including 12 U.S.C. §2614.  The Court has supplemental jurisdiction over any state law claims, because they arise from the same nucleus of operative fact.

15.     This Court also has diversity jurisdiction because Mr. Cooper is a citizen of Texas and Delaware, Title365 is a citizen of California, both Thomas and Courtney Burke are citizens of Illinois, and because the relief sought, in the form of loss of funds, interest and punitive damages exceeds $75,000. 28 U.S.C. § 1332.

## STATEMENT OF CLAIMS

16.     This matter involves the refusal of Defendant to respond to a RESPA request and also involves what is known as "real estate closing wire fraud."

17.     At all times, including the present, Plaintiffs had a home mortgage loan with Mr. Cooper of approximately $376,000.   Plaintiffs sought to re-finance the same home and pay-down a portion of the principal, which gave rise to the subject of this complaint.

18.     As part of the arrangement, Plaintiffs agreed to pay Mr. Cooper $137,341 by wire transfer representing the difference between the former loan and the new loan.  Mr. Cooper conducted all correspondence via email and phone, including preparation of the closing statement.

19.     Loan Officer Michael Sanford at Mr. Cooper sent Thomas Burke an email on March 20, 2020, which transmitted closing documents and stated:

You'll want to use the email to sign the docs. At the bottom of it it'll say if you're having troubles logging in click here. If you use that link then that should allow you to sign.

20. Mr. Burke sent the signed documents to Mr. Cooper that same day.

21. Later on March 20, Michael Sanford emailed the Plaintiffs at 12:24 p.m.:

Thanks, once I have the final dollar amount for closing I'll let you know and send the instructions for wiring it.

Therefore, Plaintiffs expected Mr. Cooper to email them wiring instructions.

22. Plaintiffs are unsophisticated consumers, and did not know how unusual it was for the lender to provide funding instructions, and did not know how risky it is to transmit wire instructions through email.

23. Defendants, however, knew the risks associated with emailing wire instructions, and emailed the Burkes' wire instructions in spite of this, in furtherance of their own pecuniary interests, and in wanton disregard for the Burkes.

24. At that time, Plaintiffs believed the closing would take place in a day or two, following completion of the wire transfer. The closing was to be done in Plaintiff's home by Defendant's representative and affiliate, and a notary. On March 22, Mr. Burke emailed Michael Sanford stating that the closing could take place on Thursday, March 26, to which Mr. Sanford initially agreed but later changed the closing date to Friday, March 27.

25. Upon information and belief, the fraudster intercepted these exchanges through Mr. Cooper and/or Mr. Sanford's email system, and emailed wiring instructions to the Plaintiffs.

26. It appears as though the fraudster used an email address of michaelsanford@tuta.com, but masked such email address so that it looked like the email came from Mr. Sanford's Mr. Cooper address.

27. Upon information and belief, at the same time, the fraudster sent messages to Mr. Cooper using an email address such as "tsburke@tuta.com."

28. Upon information and belief, using this technique the fraudster took control of the transaction.

29. Mr. Cooper and Title365 each had duties to have had safeguards in place designed to prevent the fraud that happened here, but either had no such safeguards or failed to follow their own policies or protocols concerning such.

30. On March 25, 2020 Plaintiffs received email instructions from the fraudster that first instructed Plaintiffs to wire transfer $137,341.18 from Plaintiff's Chase Bank account to the fraudster's account at First Columbia Bank of Pennsylvania, which bank, for unknown reasons refused to accept the wire transfer. Upon information and belief, the bank cancelled the transaction because of suspicious conduct, but did not tell Plaintiffs.

31. Neither Mr. Cooper, Michael Sanford, Title365 nor anyone else told the Burkes that the original transaction was cancelled.

32. Instead, after believing they had successfully funded the loan pursuant to the instructions received, the Burkes waited at their home on the date the closing was supposed to happen, waiting for the closing agent to show up.

33. But the closing agent never showed up.

34. Instead of explaining that the initial transaction had been cancelled by the receiving bank for possible fraud, Sanford simply set another closing to happen a few days later.

35. Attendant to the new closing date, on March 27, 2020, the fraudster instructed Plaintiffs by email to wire transfer $137,341.18 to the fraudster's Wells Fargo Bank, which Plaintiffs did.

36.     On March 30, 2020, Mrs. Burke received a call from the Wells Fargo Bank informing her that the funds Wells Fargo received on March 27 were being spent more rapidly than normal, raising suspicions on the part of Wells Fargo.

37.     Mrs. Burke immediately asked Wells Fargo to stop payment on the transaction. On April 6, 2020 Plaintiffs received back $100,000 of their funds, with the remaining $37,341.18 stolen.

38.     Minutes after Mrs. Burke stopped payment on the Wells Fargo wire with Wells Fargo, Mr. Burke went in person to the Chase Bank branch where the wire was initiated so that he could inform Chase and stop payment on the wire from the Chase end of the transaction.

39.     While attempting to stop payment while in the Chase Bank, Mr. Burke also called Michael Sanford and informed him that Wells Fargo had flagged the wire transfer as fraudulent

40.     During this conversation with Mr. Sanford, while Mr. Burke was still at the Chase Bank, Mr. Burke and Mr. Sanford both scrutinized the email addresses that they'd been using to correspond with most recently—specifically, the email addresses that both parties had been using to transmit the wire transfer instructions—and both Mr. Burke and Mr. Sanford realized that the email addresses they'd been using were fraudulent. They discovered that the transaction had been highjacked; whereupon Mr. Sanford sated "Oh shit!."

41.     Both Mr. Cooper and Title 365 knew, or should have known, that fraud was happening and a third party was controlling the transaction for many reasons, including because:

   a.     They had emailed wire instructions to the Burkes, which they both knew was extraordinarily risky, and on information and belief, against both companies' policies, practices and procedures.

   b.     The wire transfer for the first attempted closing was cancelled.

      c.      After arranging for an initial loan closing on or after March 20, 2020 Michael Sanford received no further emails from Plaintiff's account: tsburke@gmail.com.

      d.      There was a suspicious delay in the closing date that should have been a red flag.

      e.      At the time of the theft, mortgage loan fraud through account hacking was well known in the mortgage industry. Plaintiff alleges that Defendant had instructional materials, procedures and guidelines in effect to avoid hacking and bank wire fraud. These were not followed by Defendant in this case.

42.      Plaintiffs, a married couple with two young children work in the education field and have little knowledge of the intricacies of obtaining a mortgage loan, or wire transfers.

43.      Accordingly, Plaintiffs relied on Mr. Cooper and Title365 to safely help them through the process. Plaintiffs regarded Michael Sanford as their agent who would guide them through the complicated process of retiring and partially paying off their prior mortgage loan with Defendant and securing a new loan. Mr. Cooper was the servicer for the existing loan, and was to be the servicer for the new loan, too.

44.      Mr. Cooper acted as the Burkes' fiduciary-in-fact, because they usurped the role typically held by Title365, in directing where funds were to be sent for a mortgage transaction.

45.      Title365 was derelict in its duties to the Burkes in permitting Mr. Cooper to arrange for funding of the loan and provide wire instructions.

46.      Prior to March 27, 2020, Defendant through its agent Michael Sanford provided instructions to the Burkes through unsecure email messages, including the initial application, Mr. Cooper's numerous forms and the closing statement.

47.      At no time did any person at Mr. Cooper or Title365 warn Plaintiffs that bank wire instructions should not be communicated via emails. None of the numerous documents

Defendant provided to the Plaintiffs referred to safeguards that should be taken relative to mortgage closing fraud.

48.     In fact, Title365 *never* communicated directly with the Burkes. Not only was this company, whose primary role in the transaction was to ensure proper funding conspicuously absent from any aspect of the transaction, it had arranged for a third party stand-in to run the closing at the Burkes' home.   All this took place while the Burkes were to be charged for TITLE265 fees.

49.     On information and belief, Mr. Cooper's own internal instructions to its employees would prohibit using email communications for loan closings messages that identify the recipient bank, the recipient account's name, amount of a transfer or the recipient's bank account number.  Such information would safely be transmitted by phone, encrypted messages, facsimile and other safe methods.

50.     Mr. Cooper circumvented those policies with regard to the Burkes, in order to push their loan through for Mr. Cooper's gain. Plaintiffs suffered substantial monetary losses as a result.

51.     Defendants both knowingly breached the widely-accepted standard of care for transmittal of wire instructions.

52.     Both defendants are in the business of supplying information for the guidance of others in their business transactions, including the type of transaction at issue here and including the precise transaction here.

53.     For its part, Title365 had a duty to Plaintiffs to: (1) receive and safeguard the Plaintiffs' confidential financial information, (2) receive and safeguard confidential information regarding the details of the purchase transaction, such as the cost of the sale and the amount and

timing of disbursements, (3) advise the Plaintiffs of all material facts relating to the services it

was providing, and (4) take all steps necessary to ensure that the closing would be handled in a

safe, prudent, and reasonable manner.

54.    Title365 holds itself out to consumers, including the Burkes, as a company that

will adequately perform the above duties. The Burkes relied upon Title365's representations and

inferences that it would adequately satisfy those duties.

55.    Title365 breached these duties, to Plaintiffs' material detriment.

56.    The fraud – and the entire situation – was foreseeable to each defendants, and was

virtually unforeseeable to Plaintiffs due to the fact that they virtually never do wire transfers. The

subject property is their first home, and this was their first refinance attempt, ever.

57.    Both Defendants owed Plaintiffs a duty not to sent wire instructions by unsecure

email, and also to warn Plaintiffs not to send or accept sensitive information by unsecure email.

58.    When he learned about the fraud, Thomas Burke immediately contacted his bank,

the Chase Bank, in Evanston to try to cancel the wire transfer.  Following what appears to be an

unusual delay, the Chase Bank communicated with the fraudster's bank, Wells Fargo, and the

latter managed to salvage a portion of the wire transferred deposit, $101,809.75, which was sent

back to the Chase Bank and deposited in Plaintiff's account.

59.    On August 13, 2020 Plaintiff sent a qualified written request, Exhibit A to Mr.

Cooper, requesting specific information concerning their loan, the failed loan transaction and the

loan they were supposed to have, but didn't ever get funded.

60.    On August 13, 2020 Mr. Cooper acknowledged receipt, Exhibit B, and on August

27, 2020, Mr. Cooper responded with Exhibit C. These acknowledgements impermissibly and

confusingly blend the two loan transactions: they reference the loan number for the existing loan

that was being refinanced, but provide information and blame plaintiffs concerning the failed, fraudulent, transaction.

61.     Quite outrageously, <u>Exhibit C</u> blames the Burkes for Mr. Cooper's participation in the fraud, and falsely claims that it concluded that "no error occurred."

62.     Defendants have concealed relevant facts from plaintiffs, that prevent more detail here.

63.     Plaintiff sent a qualified written request to Title365, too, which Title365 refused to respond.

64.     Defendants' actions and omissions as described herein were commercially unreasonable, and recklessly and intentionally placed their own pecuniary interests above Plaintiffs' monetary security.

65.     Plaintiffs suffered inconvenience, anguish and monetary damages in the form of attorney's fees and other costs as a result of Defendant's refusal to meaningfully respond to Plaintiff's RESPA request. This is of course on top of Mr. Cooper and Title365's refusal to fix the situation by paying the Burkes the approximately $40,000 they are still missing. Moreover, Mr. Cooper has taken the position that Plaintiffs still owe it for closing costs associated with the failed loan.

66.     Plaintiffs are a young family that does not have $40,000 to spare.

67.     The theft of $40,000 from a young family happening in the way that this did was foreseeable by defendants, and was a silent but outrageous, sudden, calamitous and dangerous occurrence.

68.     Defendants' actions and omissions with regard to emailing wire instructions, or in the case of Title365 permitting Mr. Cooper to do so, were so foreseeable, ultra vires and

outrageous as to render them intentional. In this sense, Defendants' emailing wire instructions to Plaintiffs constitutes the intentional act of permitting someone to steal Plaintiffs partial loan payoff, and/or cooperating and assisting in such.

69.     At the time of the subject instance, Mr. Cooper did not have adequate internal controls to assure that safe procedures were being followed.  Immediately after the instant fraudulent event on April 2, 2020 Mr. Cooper had an advertisement on its website for technical persons familiar with wire fraud.  On information and belief, Mr. Cooper did not have adequate personnel or systems employed to avoid real estate wire transfer fraud.

70.     Because the event was outrageous, sudden, calamitous and dangerous, Plaintiff Thomas Burke suffered physical, physiological and other damages as a direct result of the Defendants' actions and omissions. He suffered for example, sleeplessness, anxiety, irritability, and inability to effectively care for his family during the first days of the COVID quarantine. Plaintiff Courtney Burke suffered physiological and emotional personal injury too, including sleeplessness, anxiety, irritability, weight gain and upset stomach. Both plaintiffs felt unsafe, and were deeply shattered because of this invasion of their private lives and theft. Both Plaintiffs sought professional medical help as a result of Defendants' actions and omissions.

71.     Plaintiffs tried to resolve the issues herein with Mr. Cooper directly, pre-suit, and Mr. Cooper would not substantively discuss any kind of resolution at all.

## COUNT I

### REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA") QUALIFIED WRITTEN REQUEST

72.     Plaintiffs incorporate all paragraphs of this Complaint.

73.     Plaintiffs made two valid qualified written requests. Exhibit A is one of the requests.

74. Mr. Cooper did not properly respond, and did not remedy the situation presented. Exhibits B and C.

75. The second qualified written request is in the form of a demand for Mr. Cooper to remedy the errors that occurred by paying Plaintiffs money, sent on April 23, 2020. Mr. Cooper did not respond in writing to the second qualified written request.

76. Mr. Cooper's responses to the qualified written requests were insufficient. It should have provided information about the failed transaction, provided the requested documents and should have remedied the situation.

77. Plaintiffs have been damaged by Mr. Cooper's failure to properly respond, and failure to remedy the situation presented.

WHEREFORE, Plaintiffs seek judgment in their favor and against Mr. Cooper for:

a. An injunction against Mr. Cooper providing wire instructions by email in the future;

b. Actual damages, including personal injury damages;

c. Statutory damages;

d. Punitive damages;

e. Attorney's fees and costs; and

f. Any other relief the Court finds just and proper.

## COUNT II

### GROSS NEGLIGENCE and WANTON CONDUCT

78. Plaintiffs incorporate all paragraphs of this Complaint.

79. Through its actions and omissions, Mr. Cooper voluntarily acted as fiduciary-in-fact as to Plaintiffs with regard to the refinance transaction.

80.     Title365 was supposed to act as a fiduciary for closing of the loan, but knowingly, willfully and wantonly breached those duties as described above, to Plaintiffs' material detriment.

81.     Both as a fiduciary and as the primary point of contact for the refinance, Mr. Cooper breached its duties to Plaintiffs to their substantial and material detriment, in at least the following ways:

a.   Usurped the job of its affiliate Title365 with regard to the transaction.

b.   Failed to follow well-known and long-established industry guidelines to avoid cyber security scams.

c.   Defendant either did not have or maintain protocols to ensure that sensitive confidential bank information provided to its loan customers were kept confidential.

d.   Permitted its employees to send confidential bank information over unsecured commercial internet.

e.   Failed in this case to keep track of communications and time lines surrounding the loan closing.  Specifically Defendant failed to:

   i.      provide Plaintiffs with an expected time line for the closing,

   ii.     monitor the events of the closing,

   iii.    Stay in close communication with Plaintiffs by phone or other secure communication method,

   iv.     investigate the reasons for the delay of the closing date from March 25 to March 27, 2020,

   v.      simply telephone the Plaintiffs to coordinate the closing, and

vi.      see that Defendant was communicating with a fraudster by not recognizing the fraudster's email address.

f.   Provided its customers with only two alternate methods of receiving business documents, either by United States mail or via "electronic transmission," but did not offer a safe means of transmitting such documentation or information such as a phone call, personal meeting, encrypted electronic communication or facsimile (telefax).

g.   Failed to follow basic security procedures by inspecting each and every email to ensure the addresses were safe.  This security procedure was extremely important in an industry known to fall prey to email identity hacking.

h.   Failed to maintain adequate technical staff to advise personnel and establish and maintain cyber security systems.

i.   On information and belief, Defendant had other security breaches around the same time as the instant theft, but delayed action in having or increasing management control over its internet security.

j.   Defendant provided Plaintiffs with a "fraud" statement by the Federal Bureau of Investigation which addressed truthfulness in the application process which solely protected Defendant, but failed to provide Plaintiffs with information on internet identity theft.

k.

WHEREFORE, Plaintiffs seek judgment in their favor and against Mr. Cooper and Title365 for:

a. A declaration that it is *per se* gross negligence and wanton conduct for Mr. Cooper or Title365 to send wire instructions through "regular" unsecured email;

b. Damages in an amount exceeding $75,000, including actual damages, personal injury damages and punitive damages;

c. Attorney's fees and costs; and

d. Any other relief the Court finds just and proper.

<u>**COUNT III**</u>

**AIDING AND ABETTING FRAUD**

82. Plaintiffs incorporate all paragraphs of this complaint.

83. Defendants both knew that sending wire instructions by unsecured email was extremely high risk.

84. Defendants ignored industry cautions concerning the high risks of using emails to transmit bank wire transfer instructions.

85. In setting up the transaction as described above, including using email to send wire instructions, both defendants knowingly, recklessly and wantonly participated in the theft.

86. Defendants both failed to properly manage and monitor the loan closing transactions above, and thus knowingly, recklessly and wantonly participated in the theft.

87. Defendants therefore both aided and abetted the fraud that resulted in the theft of Plaintiff's money.

88. For aiding and abetting the fraud, Plaintiff seeks recovery of the stolen funds, plus interest and punitive damages of two times the revenue loss.

WHEREFORE, Plaintiffs seek judgment in their favor and against Mr. Cooper for:

a.  A declaration that it is per se gross negligence and wanton conduct for Mr. Cooper or Title365 to send wire instructions through "regular" unsecured email;

b.  Actual damages, including interest;

c.  Punitive damages;

d.  Attorney's fees and costs; and

e.  Any other relief the Court finds just and proper.

<u>**COUNT IV**</u>

**BREACH OF FIDUCIARY DUTY**

89.    Plaintiffs re-allege all paragraphs of this complaint.

90.    Plaintiffs are unknowledgeable and unsophisticated in matters pertaining to the complexities of wire transfers, mortgage retirement, re-financing and mortgage closing.

91.    Mr. Cooper currently holds a real estate interest in Plaintiff's home in the form of a mortgage.  Because of that fact, Mr. Cooper stands in a position of trust with respect to Plaintiff's property.  Moreover, Mr. Cooper took on certain aspects of the settlement agent with regard to the Burkes' loan, and thus acted as a fiduciary.

92.    Title365 was supposed to act as a fiduciary as to Plaintiffs with regard to the transaction, but was derelict in such duties. For example, Title365 was completely absent, improperly delegated some of its duties to a third party failed to adequately monitor the transaction and failed to adequately communicate with Plaintiffs.

93.    Because Plaintiffs lacked expertise in connection with ordering and managing the loan transaction, Plaintiffs relied on Mr. Cooper and its authorized agent Michael Sanford in all respects and treated Mr. Sanford as their agent in the loan closing transaction.

94.     Mr. Cooper directed Plaintiffs to partially pay off the existing mortgage by using a wire transfer to an escrow agent, TITLE365, which is affiliated with Mr. Cooper.  In doing so, Mr. Cooper directed the handling of funds and assumed the role of fiduciary in the process.

95.     Plaintiffs reasonably placed their trust and confidence in defendant in this matter. Defendants both had influence and superiority over plaintiffs; and thus owed plaintiffs the duties of honesty, loyalty, and care; fiduciary duties.  Mr. Cooper already had a legal interest in the underlying real estate by reason of the pre-existing mortgage and was in a position of trust. Accordingly, Defendant acted as a Plaintiff's fiduciary in this transaction.

96.     Defendants' actions and omissions with regard to emailing wire instructions, or in the case of Title365 permitting Mr. Cooper to do so, were so ultra vires and outrageous as to render them intentional.

97.     Plaintiff Thomas Burke also suffered personal injury as a direct and proximate result of Defendants' breach.

WHEREFORE, Plaintiffs seek judgment in their favor and against Mr. Cooper and Title365 for:

        a.   A declaration that it is a breach of fiduciary duty for a mortgage company or title company to correspond concerning wire instructions through "regular" unsecured email;

        b.   Actual damages, including interest and personal injury damages;

        c.   Punitive damages;

        d.   Attorney's fees and costs; and

        e.   Any other relief the Court finds just and proper.

**COUNT V**

## ILLINOIS CONSUMER FRAUD ACT

98.     Plaintiffs incorporate all paragraphs of this complaint.

99.     Each defendant owed Plaintiffs special duties, given their status and the relationship among them, including for example fiduciary duties.

100.    Both defendants acted unfairly and deceptively with regard to the facts and circumstances described above, as those terms are used within the Illinois Consumer Fraud Act.

101.    Each defendant's breach of these special duties was committed willfully, knowingly and intentionally.

102.    Plaintiffs were damaged by defendants' unfair and deceptive actions and omissions.

103.    Defendants' actions and omissions with regard to emailing wire instructions, or in the case of Title365 permitting Mr. Cooper to do so, were so ultra vires and outrageous as to render them intentional.

104.    Plaintiff Thomas Burke also suffered personal injury as a direct and proximate result of Defendants' breach.

WHEREFORE, Plaintiffs seek judgment in their favor and against Mr. Cooper and Title365 for:

      a.   Actual damages, including interest, and personal injury damages;

      b.   Punitive damages;

      c.   Attorney's fees and costs; and

      d.   Any other relief the Court finds just and proper.

## COUNT VI

## NEGLIGENT MISREPRESENTATION

105.    Plaintiff incorporates all paragraphs.

106.    Each defendant is in the business of supplying information for the guidance of others in their business transactions.

107.    Each defendant owed Plaintiffs a duty of care not to make negligent, willful or knowing misrepresentations concerning the transaction referenced above.

108.    Defendants breached this duty, and Plaintiffs' property was damaged as a direct result thereof. Defendants' negligence directly caused a portion of Plaintiff's down payment to be stolen thus breaking the payment apart so that it could only be partially returned.

109.    Defendants' actions and omissions with regard to emailing wire instructions, or in the case of Title365 permitting Mr. Cooper to do so, were so ultra vires and outrageous as to render them intentional.

110.    Plaintiff Thomas Burke also suffered personal injury as a direct and proximate result of Defendants' breach.

WHEREFORE, Plaintiffs seek judgment in their favor and against Mr. Cooper and Title365 for:

e.  Actual damages including personal injury and economic loss;

f.  Punitive damages;

g.  Attorney's fees and costs; and

h.  Any other relief the Court finds just and proper.


Respectfully Submitted,


/s/Alexander H. Burke

Alexander H. Burke

**BURKE LAW OFFICES, LLC**

909 Davis Street, Suite 500
Evanston, IL 60201
(312) 729-5288
ABurke@BurkeLawLLC.com


Robert E. Burke
Attorney at Law
999 Michigan Ave.
Evanston, IL 60202
Burke.Roberte@gmail.com
(312) 961-1457